**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   SC-15-1390-FYJu |
| ) | |
| WILLIAM GUTHRIE, ) | Bk. No.   15-03397-MM7 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| WILLIAM GUTHRIE, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v.                             ) | **MEMORANDUM**[*] |
| ) | |
| RONALD E. STADTMUELLER, ) | |
| Chapter 7 Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on January 19, 2017
at San Diego, California

Filed – January 31, 2017

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Margaret M. Mann, Bankruptcy Judge, Presiding

Appearances:    Gregory S. Cilli of The Feldman Law Group argued
on behalf of Appellant William Guthrie; Ronald E.
Stadtmueller, Chapter 7 Trustee argued pro se.

Before: FARIS, YUN,[**] and JURY, Bankruptcy Judges.

_____

     [*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have, see Fed. R. App. P. 32.1, it has no precedential value, see
9th Cir. BAP Rule 8024-1.

     [**] The Honorable Scott H. Yun, United States Bankruptcy
Judge for the Central District of California, sitting by
designation.

**INTRODUCTION**

Appellant William Guthrie appeals from the bankruptcy court's order sustaining chapter 7[1] trustee Ronald E. Stadtmueller's ("Trustee") objection to his claimed homestead exemption pursuant to § 522(g). The bankruptcy court did not err in sustaining the objection. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**

**A.    Prepetition events**

Mr. Guthrie and his wife, Christine Guthrie, divorced in 2005 over concerns about his finances. He claimed that one of the financial concerns was his debt stemming from his failure to pay taxes in 2004. In 2007, Mr. Guthrie reached a settlement with the Internal Revenue Service ("IRS"), whereby he agreed to pay $152,000 in taxes, penalties, and interest.

In May 2012, Mr. Guthrie purchased a home in Vista, California (the "Property"). Title to the Property was initially in Mr. Guthrie's name only. However, in December 2012, he transferred title to the Property to Ms. Guthrie, with whom he was still living, via quitclaim deed for no consideration. As we shall see, he has given a wide variety of explanations for this transfer.

After a series of unsuccessful business ventures, Mr. Guthrie contemplated filing for bankruptcy protection. He met with a paralegal at a San Diego law firm, who allegedly told

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

him not to transfer title to the Property back to himself without first consulting the firm. Mr. Guthrie claimed that, after speaking to the paralegal, he believed that he still owned the Property, even though Ms. Guthrie held legal title.

**B.    The bankruptcy schedules and claimed homestead exemption**

Mr. Guthrie filed for bankruptcy pro se because he could not afford to hire an attorney. He filed a chapter 7 petition, statements, and schedules on May 21, 2015, which scheduled the Property as his real property (with a value of $400,000 and encumbered by a secured lien of $191,000), and claimed a "home" exemption in the amount of $400,000 and a "homestead" exemption for $125,000. He said that he "wanted to make sure the bankruptcy court knew about my home, and to make sure that it did not appear that I was trying to hide anything." He neglected to mention, however, that Ms. Guthrie owned legal title to the Property.

At a § 341(a) meeting of creditors, the Trustee informed Mr. Guthrie that there were a number of deficiencies in his filings. In particular, the claimed $400,000 homestead exemption exceeded the allowable exemption under state law. The Trustee continued the meeting of creditors to allow Mr. Guthrie to provide certain documentation regarding other matters.

Shortly thereafter, Mr. Guthrie retained counsel to represent him in the bankruptcy proceedings. He claimed that attorney Gregory Cilli advised him "that I should inform the trustee at the next creditors' meeting that I had transferred the property to her which I did without giving it any thought."

By the second session of the meeting of creditors,

3

Mr. Guthrie had not amended his schedules. The Trustee then advised Mr. Guthrie and Mr. Cilli that he would object to the homestead exemption. Mr. Guthrie informed the Trustee that his ex-wife owned the Property and that he would amend Schedule C to reflect her ownership. He further told the Trustee that he had transferred the Property to Ms. Guthrie because he was not good with finances. The Trustee continued the meeting of creditors again to permit Mr. Guthrie to amend his schedules.

After the second session of the meeting of creditors, Mr. Guthrie amended his schedules to remove the Property and the claimed exemption, thus apparently disavowing any interest in the Property.

At the third session of the meeting of creditors, the Trustee questioned Mr. Guthrie about a number of issues, including the Property. After Mr. Cilli confirmed that they had removed the Property and claimed exemption from the schedules, the Trustee asked about Mr. Guthrie's reasons for transferring the Property to his ex-wife. Mr. Guthrie said that it was "because of my I.R.S. debts that I – that I realized I wouldn't be able to pay quickly enough." He said that he wanted to make sure that the IRS "wouldn't come after it [the Property] right away and [to] try to get time so I'd have enough income to do it." The Trustee pressed Mr. Guthrie:

> TRUSTEE: Okay. But you transferred the house to your ex to - to - maybe I'm misunderstanding your testimony. I thought your testimony was you transferred the house to your ex-spouse to avoid the I.R.S. from levying your house or going after your house?
>
> MR. GUTHRIE: It - uh - in reality, yes, because -

4

TRUSTEE: Okay.[2]

The day after the third session of the meeting of creditors, the Trustee filed an ex parte application to employ general counsel.[3] The Trustee stated that he wanted to employ counsel to pursue avoidance claims, including to regain estate assets:

> Assist the Trustee in analyzing certain pre and post-bankruptcy transactions completed by the debtor regarding possible avoidance claims, and to prosecute such avoidance claims to the extent they exist. Counsel may be required to file adversary proceedings against third parties to regain assets of the estate, as well as to prepare all necessary documents and court pleading in support of such proceeding or any other issues related to the debtor's inappropriate transfers of estate property[.]

The court granted the application to employ Davis & Stadtmueller, LLP.

A few days later, Mr. Guthrie amended his schedules again. This time, he rescheduled the Property with a value of $350,000 (reduced from $400,000). He also amended his Schedule C to claim a $9,000 exemption under California Code of Civil Procedure ("CCP") § 704.730(a)(1) and a $150,000 exemption under CCP § 704.730(a)(3).[4]

---

[2] Later, Mr. Guthrie tried to explain away this testimony. He said, "I personally have no real fear that the IRS would take the home because they had not tried once to do so in eight years." He claimed that he was too nervous or embarrassed to explain that he had transferred the Property to his ex-wife to make her feel more secure.

[3] Mr. Guthrie claimed that his ex-wife attempted to commit suicide after she learned that the Trustee filed an application to employ general counsel as a precursor to objecting to the homestead exemption.

[4] CCP § 704.730(a) provides, in relevant part:

(continued...)

5

On the same day, Mr. Guthrie arranged to transfer the title to the Property back to himself, "so that [he] would not get in trouble with the lender for having transferred title, and to avoid the possibility of the Trustee objecting to [his] homestead exemption claim . . . ."

Four days later, Mr. Guthrie amended his schedules for the third time to claim a $175,000 exemption in the Property under CCP § 704.730(a)(3).

---

[4](...continued)
(a) The amount of the homestead exemption is one of the following:

(1) Seventy-five thousand dollars ($75,000) unless the judgment debtor or spouse of the judgment debtor who resides in the homestead is a person described in paragraph (2) or (3).

. . .

(3) One hundred seventy-five thousand dollars ($175,000) if the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:

(A) A person 65 years of age or older.

. . .

(C) A person 55 years of age or older with a gross annual income of not more than twenty-five thousand dollars ($25,000) or, if the judgment debtor is married, a gross annual income, including the gross annual income of the judgment debtor's spouse, of not more than thirty-five thousand dollars ($35,000) and the sale is an involuntary sale.

CCP § 704.730(a).

6

**C.   The Trustee's objection to the homestead exemption**

The Trustee timely filed his objection ("Objection") to Mr. Guthrie's claimed homestead exemption pursuant to § 522(g)(1).  He objected to the homestead exemption under § 522 because Mr. Guthrie had no legal interest in the Property on the date of bankruptcy.  He also argued that § 522(g)(1) barred Mr. Guthrie's exemption claim because he had voluntarily quitclaimed the Property to his ex-wife to avoid the IRS's attempt to levy the Property, which constituted a fraudulent transfer under § 548.

In response to the Objection, Mr. Guthrie denied any fraudulent intent.  He claimed that he "transferred the property to Christine to help her and make her feel better about our finances and feel like she had something to live for[.]"

Prior to the hearing on the Objection, the bankruptcy court issued a tentative ruling.  Regarding avoidance of the transfer of the Property to Ms. Guthrie, the court stated, "Debtor and Trustee agree that legal title to the Property was transferred without receiving reasonably equivalent value, and Debtor testified at his third 341(a) hearing that he believed he would be unable to pay his IRS debts as they came due, making the Transfer at a minimum avoidable under Cal. UFTA § 3439.04(a)(2) incorporated under § 544."

Regarding the Trustee's efforts to recover the Property, the court said that "it is not clear whether Trustee's actions in this case constitute recovery [of] the property" under Glass v. Hitt (In re Glass), 60 F.3d 565 (9th Cir. 1995), because Mr. Guthrie arguably retained equitable title.

7

The bankruptcy court tentatively concluded that, "[i]f the transfer is voidable under § 544 and was returned to the estate as a result of Trustee's efforts, Debtor is not entitled to exempt the Property under § 522(g)(1)(A)."

**D.    Hearing on the Trustee's Objection**

The bankruptcy court held a hearing on the Objection on October 29, 2015.  The court informed the parties that it had reviewed the facts again and concluded that the Trustee had recovered the Property because (1) the Trustee filed his application to employ counsel to pursue avoidance actions; (2) the Property was reconveyed to Mr. Guthrie eight days later; and (3) the purpose of the reconveyance was to avoid the Trustee's Objection to the homestead exemption.

The court said that Mr. Guthrie had a form of equitable interest in the Property, but lacked legal title.  However, the transfer and recovery of legal title to the Property invoked § 522(g).

On November 10, 2015, the bankruptcy court issued its order sustaining the Trustee's Objection.  The bankruptcy court said that there was no triable issue of fact regarding whether legal title to the Property was returned to the estate as a result of the Trustee's efforts pursuant to § 522(g) and Glass.  "Transfer of legal title was sufficient to trigger the transfer provisions of § 522(g) because legal title was necessary for the Trustee to transfer the Property without litigation."

Mr. Guthrie timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

§§ 1334 and 157(b)(2)(B) and (H). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

(1) Whether the bankruptcy court erred in determining that the Property was returned to the estate as a result of the Trustee's efforts.

(2) Whether the bankruptcy court erred in determining that Mr. Guthrie was not entitled to claim a homestead exemption, despite holding an equitable interest in the Property.

**STANDARDS OF REVIEW**

We review legal issues de novo and the bankruptcy court's factual findings under a clearly erroneous standard. Village Nurseries v. Gould (In re Baldwin Builders), 232 B.R. 406, 409-10 (9th Cir. BAP 1999). "[Q]uestions regarding the right of a debtor to claim exemptions are questions of law subject to de novo review, whereas the issue of a debtor's intent is a question of fact to be reviewed under the clearly erroneous standard." Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP 2003) (citing Coughlin v. Cataldo (In re Cataldo), 224 B.R. 426, 428-29 (9th Cir. BAP 1998)).

De novo review means that we review a matter anew, as if no decision previously had been rendered. Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009).

We must affirm the bankruptcy court's factual findings unless we determine that those findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

9

We may affirm the bankruptcy court on any basis supported by the record. Heilman v. Heilman (In re Heilman), 430 B.R. 213, 216 (9th Cir. BAP 2010).

**DISCUSSION**

**A. A trustee may object to the homestead exemption under § 522(g) where he recovers property that the debtor either transferred voluntarily or concealed.**

Section 522(g) provides:

(g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if -

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; or

(2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

§ 522(g). In other words, § 522(g) "allows the debtor to exempt property that the trustee recovers under [various sections of the Bankruptcy Code] as long as the transfer was **involuntary** and the property was **not concealed** by the debtor." 4 Collier on Bankruptcy ¶ 522.12[1] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.). Conversely, a debtor may not exempt property that the trustee recovers under one of the enumerated provisions if the debtor voluntarily transferred the property or if the debtor concealed the property.

**B. The bankruptcy court properly held that § 522(g) applies.**

Mr. Guthrie argues that § 522(g) does not apply to his claimed exemption in the Property. We disagree.

10

### 1. The Trustee was entitled to recover the Property under § 544(b).

The bankruptcy court did not err when it determined that the Trustee was entitled to recover the Property under § 544(b). The court noted that the Trustee recovered the Property under § 550, insofar as, "under § 544, also incorporated into § 522(g) under § 550, trustees can avoid transfers that are otherwise voidable by an unsecured creditor under applicable law." It noted that California's Uniform Fraudulent Transfer Act ("UFTA") § 3439.04(a)(1) provides that a transfer is voidable if it is made with the actual intent to hinder, delay, or defraud. A transfer is also avoidable if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or believed or reasonably should have believed, that he would incur debts beyond his ability to pay as they came due. Because (1) Mr. Guthrie transferred the Property with the actual intent to hinder, delay, and defraud and to avoid the IRS's lien; (2) legal title to the Property was transferred without receiving reasonably equivalent value; and (3) Mr. Guthrie admitted that he believed that he would be unable to pay the IRS debts as they came due, the transfer was avoidable under the California UFTA § 3439.04(a)(2). We find no error in these decisions.

### 2. The transfer was voluntary.

There is no dispute that Mr. Guthrie voluntarily transferred the Property to his ex-wife. As a result, because §§ 522(g)(1)(A) and (B) are written in the conjunctive, it does not matter whether Mr. Guthrie also concealed the Property.

11

Mr. Guthrie argues that, because he did not conceal the Property from the court or the Trustee, sustaining the Objection did not serve the purpose of § 522(g). While it is true that Mr. Guthrie listed the Property in his original schedules, he omitted the crucial fact that he did not have title to the Property at that point. He then amended his schedules several times to avoid the Trustee's Objection to his homestead exemption: (1) after the second session of the meeting of creditors in which the Trustee questioned his exemption, he removed the Property entirely from his amended schedules; (2) after the Trustee continued to question him about the Property at the third session of the meeting of creditors and he admitted that he had transferred the Property so that the IRS "wouldn't come after it [the Property] right away and [he could] try to get time[,]" he again amended his schedules to include the Property; and (3) after the Trustee filed an application to employ counsel to avoid the transfer of the Property, he arranged to transfer the Property from his ex-wife to himself, admittedly "to avoid the possibility of the Trustee objecting to [his] homestead exemption claim . . . ."

These are not the actions of a forthright debtor that the Bankruptcy Code is meant to protect.[5]

---

[5] Mr. Guthrie also argues that he relied on the advice of the paralegal (whose firm he did not retain) and his counsel in deciding what information to disclose. Mr. Guthrie cannot blame advice from non-retained attorneys and his counsel for his decision to not disclose the prepetition transfer of the Property. See Ehrenberg v. Hidalgo (In re Hidalgo), BAP No. CC-06-1399-PaAK, 2007 WL 7540950, at *8 (9th Cir. BAP July 9,

(continued...)

12

In any event, Mr. Guthrie's supposed honesty and non-concealment of the Property alone are not determinative. Section 522(g) provides that an exemption is only valid as to property recovered by the trustee if "(A) such transfer was not a voluntary transfer of such property by the debtor; **and** (B) the debtor did not conceal such property[.]" § 522(g)(1) (emphasis added). Because these requirements are stated in the conjunctive, both must be present in order allow the exemption. Mr. Guthrie's exclusive focus on the latter requirement ignores the fact that he voluntarily transferred the Property.

### 3. Glass is controlling; the Trustee recovered the Property within the meaning of § 522(g).

Mr. Guthrie contends that the Trustee did not recover the Property for the estate because Mr. Guthrie arranged for his ex-wife to return the Property to him, but not in response to anything that the Trustee did. We disagree.

Both parties rely on this panel's decision in Glass v. Hitt (In re Glass), 164 B.R. 759 (9th Cir. BAP 1994), which the Ninth Circuit affirmed, 60 F.3d 565 (9th Cir. 1995). In that case, the debtor had transferred his residence to his son for "love and affection." He did not include his house in his schedules or disclose the transfer, and he did not claim a homestead exemption. When the trustee discovered the transfer, the debtor amended his schedules to include the property and assert a claim

[5](...continued)
2007) (Klein, J., concurring) ("It is worth noting that an advice of counsel defense is not availing where the debtor either does not rely in good faith or is trying to keep an asset out of view.").

13

of homestead exemption. 164 B.R. at 760.

The trustee objected to the claimed exemption, arguing that § 522(g) precluded the debtor from claiming a homestead exemption under § 522(b). Id. at 760-61. The trustee said that he intended to seek avoidance of the conveyance as a § 548 fraudulent transfer. Id. at 761.

Three days after the trustee filed his objection (and before the trustee commenced any avoidance action), the debtor's son conveyed the property back to the debtor in consideration of "love and affection." The debtor again amended his schedules by listing a fee interest in the residence and claiming the homestead exemption. Id.

The bankruptcy court overruled the trustee's objection because the trustee had not shown that he had directed any action against the son in order to achieve reconveyance of the residence to the estate. Accordingly, the trustee had not "recovered" the property and could not object under § 522(g). Id.

On appeal, the panel noted that "[n]o court has addressed a situation in which the trustee has not filed a complaint for avoidance or recovery but has been instrumental in recovery of the property." It considered the plain meaning of the statute and said, although a "literal interpretation of the statute . . . seems to indicate that 'recovery' of the property must be accomplished pursuant to an action commenced under one of the enumerated code sections[,]" "requiring the Trustee to recover property through a formal avoidance action would defeat the drafters' intent of limiting exemptions where a debtor has voluntarily transferred property in a manner giving rise to the

14

trustee's avoiding powers or has engaged in fraudulent conduct by failing to disclose the transfer or an interest in the property." Id. at 763. The panel concluded:

> Accordingly, we hold that where a debtor voluntarily transfers property in a manner that triggers the trustee's avoidance powers or the debtor knowingly conceals a prepetition transfer or an interest in property, and such property is returned to the estate as a result of the trustee's actions directed toward either the debtor or the transferee, the debtor is not entitled to claim an exemption under § 522(g)(1). It is not necessary for the trustee to commence a formal adversary proceeding or obtain a final judgment to prevail on an objection to a debtor's claim of exemption pursuant to § 522(g)(1).

> A trustee, however, must present sufficient facts upon which a bankruptcy court could reasonably conclude that a debtor transferred property in such a manner as to invoke the trustee's avoidance powers under §§ 510(c)(2), 542, 543, 550, 551 or 553, the transfer was voluntary or the debtor knowingly concealed the transfer or an interest in the property, and the property was returned to the estate as the result of the trustee's efforts, not limited to actions directed toward the transferee.

Id. at 764-65.

The panel held that the bankruptcy court erred in overruling the objection. It said that the "overwhelming inference" from the voluntary transfer of the property for no consideration and the debtor's failure to disclose the property or its transfer "is that the Debtor was attempting to hide assets from his creditors, thus giving rise to a cause of action under § 548(a)(1)." Id. at 765. Additionally, the trustee's actions

> were instrumental in the return of the property to the estate. Three days after the Trustee filed his Objection, the Debtor's son reconveyed the property to the Debtor by quitclaim deed. Since the Debtor and the transferee are father and son and the transfer occurred on the heels of the Objection, the only reasonable inference to be drawn is that the Trustee's promise of legal action had a coercive effect on father and son, directly resulting in the return of the property to the

15

estate.

*Id.* The panel thus reversed the bankruptcy court's overruling of the trustee's objection.

The debtor appealed to the Ninth Circuit, arguing, in relevant part, that the panel had misconstrued the term "recovers." The Ninth Circuit affirmed. It noted that, "following the debtor's failure to properly disclose the property transfer there was not only a 'suggestion' by the trustee, but also a filed objection that contained the threat of use of avoidance powers." 60 F.3d at 569. It held that "[t]he filing of the objection containing the threat to use avoidance powers which resulted in the reconveyance of the property for the estate was 'some action.'" *Id.*

*Glass* is nearly on all fours with this case. The Trustee recovered the Property through "some action" when, after learning that Mr. Guthrie had transferred the property to his ex-wife to avoid IRS liens, he filed the application to employ counsel potentially to file an avoidance claim to recover property to the estate. We do not think it a coincidence that, roughly a week after the Trustee sought to employ counsel and gave notice that he would seek to prosecute avoidance claims, Ms. Guthrie conveyed the Property back to Mr. Guthrie, and Mr. Guthrie again listed the Property in his schedules.

As in *Glass*, the Trustee's filing "contained the threat of use of avoidance powers." *See id.* We similarly conclude that "the only reasonable inference to be drawn is that the Trustee's promise of legal action had a coercive effect on [transferor and transferee], directly resulting in the return of the property to

16

the estate." See In re Glass, 164 B.R. at 765. Mr. Guthrie effectively admitted the force of the Trustee's "threat" when he stated that his ex-wife attempted to commit suicide upon learning that the Trustee had retained counsel to pursue avoidance claims.

Accordingly, the bankruptcy court properly determined that the Trustee recovered the Property for the estate within the meaning of § 522(g).

### 4. Mr. Guthrie's equitable interest in the Property under state law does not overcome § 522(g).

Mr. Guthrie claims, and the bankruptcy court acknowledged, that he had an equitable interest in the Property. Under California law, a debtor may claim a homestead exemption in an equitable interest in estate property, even if he has fraudulently transferred the property. See Putnam Sand & Gravel Co. v. Albers, 92 Cal. Rptr. 636, 639 (Cal. Ct. App. 1971) ("notwithstanding the fraudulent conveyance, the defendants . . . retained an equitable interest in the property which would enable them to file a valid claim of homestead before judgment"). Moreover, under California law, a debtor may claim a homestead exemption in his primary residence, even if he does not own it. See Elliott v. Weil (In re Elliott), 523 B.R. 188, 195-96 (9th Cir. BAP 2014) ("Elliott I") (holding that, under California's automatic exemption in CCP § 704.730, the debtor's conveyance of the property's "title to a third party does not defeat his right to an automatic exemption, because continuous residency, rather than continuous ownership, controls the Article 4 analysis . . .").

Mr. Guthrie is also correct that his equitable interest in

17

the Property became part of his bankruptcy estate. Section 541(a) provides that the commencement of a bankruptcy case creates an estate that is composed of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1).

Mr. Guthrie argues that, at most, the Trustee recovered only legal title to the Property. He contends that the bankruptcy court should have allowed his homestead exemption in the equitable interest he retained despite his fraudulent transfer. We disagree.

We addressed a similar question in Elliott v. Weil (In re Elliott), 544 B.R. 421 (9th Cir. BAP 2016) ("Elliott III"). In that case, the debtor transferred his real property to his company before he filed his bankruptcy petition, did not disclose the property in his bankruptcy case, and then had the company reconvey the property to him after he received his discharge. The BAP affirmed the bankruptcy court's decisions that the debtor had concealed his interest in the property for purposes of § 522(g)(1)(B), and that the court's judgment in the trustee's § 542(a) turnover action[6] constituted a "recovery" for purposes of § 522(g). Id. at 433. The BAP then turned to the debtor's argument that the bankruptcy court erred in not considering whether California law still permitted his homestead

---

[6] The debtor appealed this issue in a second appeal to the BAP, Elliott v. Weil (In re Elliott), 529 B.R. 747 (9th Cir. BAP 2015) ("Elliott II"). On remand, the court required that the debtor immediately turn over possession of the property to the trustee under § 542(a). The debtor did not appeal that decision further.

18

exemption, notwithstanding his misconduct. Id. The BAP disagreed, holding instead that the court's § 522(g) determination ended the analysis: "Since the bankruptcy court appropriately denied [the debtor's] claimed homestead exemption under an applicable Bankruptcy Code provision, § 522(g)(1), **it fully resolved the Trustee's objection and was not required to proceed further to analyze [the debtor's] homestead exemption claim under state law.**" Id. at 436 (emphasis added).[7]

We agree with the Elliott III panel's reasoning. Section 522(g) limits a debtor's ability to assert exemption rights in certain circumstances, even if state law would permit the debtor to assert an exemption in those very circumstances. Once the bankruptcy court has determined that § 522(g) applies, a state exemption law cannot overcome the trustee's objection.

Mr. Guthrie relies on the BAP's unpublished disposition in Gray v. Bova (In re Bova), BAP No. EC-05-1307-NMaPa, 2006 WL 6810940 (9th Cir. BAP Mar. 7, 2006). In that case, the debtor had five siblings. Their parents transferred certain California property to the debtor and two of his siblings, but the family always understood that the property belonged to all six siblings in equal shares. Thirteen years prior to filing his chapter 7 petition, the debtor transferred his 1/3 legal interest to his sisters who owned the other 2/3 interest so that the sisters could refinance the mortgage. Despite this transfer of legal title, the family still understood that all six siblings,

---

[7] Elliott III is currently on appeal to the Ninth Circuit, 9th Cir. No. 16-60020 (Mar. 28, 2016).

19

including the debtor, owned the property in equal shares. When the debtor filed for bankruptcy, he claimed a homestead exemption in his 1/6 interest in the amount of $150,000 pursuant to CCP § 704.730(a)(3). 2006 WL 6810940 at *1.

The trustee objected to the debtor's claimed exemption, arguing that it should be disallowed under § 522(g). The bankruptcy court disagreed, and the BAP affirmed. The BAP held that the debtor retained an equitable interest in the property despite the conveyance of legal title to his sisters thirteen years prior, and that the debtor could claim a homestead exemption in that equitable interest under California law. The BAP held that § 522(g) did not apply because there was no transfer that the trustee could avoid under any of the sections listed in § 522(g). Id. at *4.

Bova is not binding on us because it is unpublished, and in any event it is readily distinguishable. In Bova, the trustee was able to realize for the estate the full value of the debtor's true interest in the property without invoking any of the avoiding powers; he could simply sell the debtor's interest in the property together with the interests of his co-owners under § 363(h) (which was designated § 363(g) when we decided Bova) and claim the debtor's share of the proceeds from his sisters, who held the property in a resulting trust for his benefit. The trustee did not need to employ any of the statutory powers enumerated in § 522(g) in order to recover and liquidate the debtor's interest in the property; the trustee asserted a claim under § 542(a), but as the panel noted, this was entirely unnecessary. In this case, however, the Trustee could not have

20

recovered the Property without invoking one of the sections listed in § 522(g).[8]

Section 522(g) might present difficult questions in a case where the trustee recovered only a limited interest in certain property.[9] But we need not reach those issues here. We hold that, where the debtor signs a deed purporting to make a voluntary, outright transfer of his entire interest in certain property and the trustee recovers that property by using (or threatening to use) his avoiding powers under § 544 or § 548, § 522(g) bars the debtor from claiming any exemption in that property.

### CONCLUSION

For the reasons set forth above, the bankruptcy court did

---

[8] Ehrenberg v. Hidalgo (In re Hidalgo), BAP No. CC-06-1399-PaAK, 2007 WL 7540950 (9th Cir. BAP July 9, 2007), which none of the parties cited, is similar to Bova. The debtor conveyed to his sister his legal interest in property that they jointly owned. When he filed for bankruptcy without listing the property in his schedules and later claimed a homestead exemption in his equitable interest, the trustee objected under § 522(g). The bankruptcy court overruled the objection, and the BAP agreed on appeal, noting that the objection was premature because the trustee had not yet recovered anything. Like Bova, Hidalgo is unpublished and not binding. It is also distinguishable because, unlike Hidalgo, the Trustee in this case has recovered the Property.

[9] Most courts considering this issue hold that § 522(g) applies even if the only interest that the trustee recovers is a lien. See, e.g., Russell v. Kuhnel (In re Kuhnel), 495 F.3d 1177, 1181 (10th Cir. 2007) (creditor's release of its security interest in a truck constituted recovery of property by the trustee); In re Lamping, 8 B.R. 709, 711 (Bankr. E.D. Wis. 1981) (under § 522(g), "transfers of a security interest are voluntary transfers and are not subject to exemption claims by the debtor after the property is recovered by the trustee").

21

not err in sustaining the Objection to the homestead exemption. Therefore, we AFFIRM.